LxttletoN, Judge,
delivered the opinion of the court:
On October 10, 1933, the Secretary of Agriculture and the plaintiff entered into an agreement pursuant to the provisions of sec. 8 (2) of the Agricultural Adjustment Act approved May 12, 1933, 48 Stat. 31, 34, known as “Marketing Agreement No. 14,” for disposal of a North Pacific wheat surplus. The pertinent provisions of this Agreement are described in findings 2 to 6, inclusive.
Sec. 4 of the Agreement authorized the Secretary to give written instructions to plaintiff to contract for the purchase of wheat, which instructions might include the quality of the wheat to be purchased, the price to be paid therefor, and the terms of purchase. Sec. 5 provided for the giving of written instructions by the Secretary to plaintiff to sell in export trade any part of the wheat so purchased pursuant to sec. 4, in the form of wheat or flour, and that such written instructions might, in the discretion of the Secretary, include the amount of wheat or flour to be sold; the sales price at which such wheat or flour be sold; the terms of such proposed sale and shipment; the port or ports of destination of the wheat or flour to be sold, and the purchaser to whom such wheat or flour should be sold. Plaintiff and its members agreed to carry out and fulfill such instructions as might be given by the Secretary to the best of their ability. Sec. 7 provided for the furnishing to plaintiff by’ its members of *432 verified statements with respect to such sales on forms to be supplied by the Secretary, which statements should include the. sales price for all the wheat and flour sold and the cost incurred.in respect to the same in accordance with the schedules set'forth in exhibits “B” and “C,” constituting a part of the Marketing Agreement. Exhibit “B” was the schedule of costs of handling, shipping, storing, and other charges with respect to the wheat to be purchased and sold, including an item .of “selling costs” to be included among the costs to be allowed iii connection with each sale made pursuant to sec. 5. Exhibit “C” was a schedule of costs of the processing of wheat into flour, and the handling and packing of the same (see finding 6).
' The term “Purchase Price” as used in the Marketing Agreement was defined to be the price provided for in the wheat contracts purchased pursuant to sec. 4 and paid, pursuant to the terms of such contracts, as provided in sec. 5 with adjustments as provided in exhibit “A” to the agreement.
The term “Sales Price” as used in the Agreement was defined, to be the f. o. b. or f. a. s. price specified in the bids submitted in connection with any sale of wheat or flour made pursuant to sec. 5. The term “Net Sales Price” as used in the Agreement was defined to be the sales price less "the costs incurred pursuant to the schedules set forth in exhibits “B” and “C” in connection with any wheat sold as wheat or flour.
Sec. 8 provided that plaintiff should, upon the sale of wheat or flour pursuant to sec. 5, present to the Secretary a verified statement, on forms to be supplied by the Secretary, showing the purchase price of wheat, the sales price, and the net sales price for such wheat or flour computed as provided in ex. “C”; and the Secretary agreed to pay the Association within a reasonable time of the receipt of such statement and other documents “which shall indicate to the satisfaction of the Secretary that such wheat and/or flour has been exported, or otherwise disposed of pursuant to Section 5 hereof, an amount equal to the difference between the purchase price and the net sales price.”
Exhibit “C” of the Agreement expressly prescribed the basis upon which the purchase price of the wheat should be calculated, and contained a schedule for the conversion of *433 flour prices to wheat prices f. o. b. track at mill terminal basis (finding 6).
Among the items included in exhibit “C” was item 3— “Deduct conversion charge of 50 cents per barrel to cover preparation and processing of wheat, packing, storage of flour, administration and fixed charges, and office selling expense.”
During the period from July 12 to August 9, 1934, the Secretary of Agriculture, as set forth in finding 7, gave plaintiff from time to time instructions to sell a specified number of barrels of flour at a specified price per barrel. In addition to the statement of the price at which the flour was to be sold, these instructions contained a provision, of which the provision in the instructions given on July 12, 1934, is typical, as follows:
Shipment — Buyer’s call, July, 1934. If not loaded in July, carrying charges at the rate of per bbl. per day to accrue to the seller after July 31, or the end of the strike if it is still in effect at that time.
The question presented in this case is whether the amount claimed by plaintiff which was collected by its members under the sales contracts as carrying charges for delay of the purchaser, in this instance the Chinese Government, to accept delivery and order shipment of the flour on dates as specified in the instructions issued, should be included in or excluded from the sales price in determining the difference between the purchase price of the wheat to be processed into flour and the net sales price of the flour as provided in secs. 7 and 8 of the Agreement and exhibits “B” and “C” thereof. Plaintiff collected under the sales contracts total carrying charges of $37,353.38. The inclusion of the total amount of carrying charges for delayed acceptance computed from the dates specified for delivery in determining the difference, or differential as it is called in the record, between the purchase price of wheat and the net sales price of flour, which was to be paid by the Secretary of Agriculture out of processing taxes, resulted in such difference being $37,353.38 less than the differ-tial calculated and determined in accordance with the express provisions of the Agreement. However, plaintiff claimed and sues for only $12,172.94 on account of the inclusion of *434 such charges from September 30,1934, to dates of delivery of the flour.
Plaintiff and the Secretary of Agriculture, as shown by the facts, were in agreement, upon conclusion of transactions between them under the Marketing Agreement, that these carrying charges of per barrel, which were intended to compensate or reimburse plaintiff’s members for the costs of carrying the flour beyond the dates specified for acceptance and delivery to the purchaser, did not under the terms of the Marketing Agreement and the intention of the parties, inure to the benefit of the Government and should be excluded from the “net sales price” of flour in calculating the difference between the purchase price of wheat and the net sales price of the flour for the purpose of payments to be made by the Secretary of Agriculture. The matter was submitted to the Comptroller General for an advance ruling before payment and the Comptroller refused to authorize the Secretary to so calculate the differentials in prices on the ground that there was no legal basis therefor in the Marketing Agreement.
We are of opinion that the interpretation of the Marketing Agreement and the instructions by the Secretary of Agriculture and plaintiff, who were the parties to the contract, was correct, and that the decision of the Comptroller General to the contrary was'erroneous. There was no estoppel as a result of payments made on shipments from time to time on the basis of the vouchers and other forms prepared and submitted by plaintiff in accordance with instructions of the Comptroller of the Department of Agriculture and his field auditors, since the record conclusively shows that plaintiff and the Government’s representatives understood at that time that plaintiff did not acquiesce in that method of calculating payments to be made by the Secretary of Agriculture, and would file a claim for adjustment in due course, which was done. The Secretary’s Office did not consider or pass upon the matter until after the transactions with the Chinese Agency under the Marketing Agreement had been completed and the amount of the per barrel per day carrying charges collectible by plaintiff’s members under the contracts for the sale of flour had been determined.
*435 The proof shows that the parties to the Marketing Agreement did not intend that the provisions and instructions from the Secretary of Agriculture to plaintiff to sell flour to the Chinese Government at a specified price per barrel, and to collect, in addition to such price, a carrying charge at the rate of per barrel per day for delayed acceptance by the buyer, should be a modification of the provisions of the Marketing Agreement for the calculation or determination of the differential between the purchase price of the wheat and the net sales, price of the flour. The Solicitors of the Agricultural Adjustment Administration and the Department of Agriculture so decided upon the facts and under the terms and conditions of the agreement.
The Solicitors in their opinions to the Administrator of the Agricultural Adjustment Administration and to the Secretary of Agriculture found that the carrying charges in question were not intended by the Secretary or the plaintiff Association or the Chinese Government to be considered as a part of the sales price of the flour within the meaning of the Marketing Agreement, but were designed and intended to offset the costs which would be incurred by plaintiff’s members as a result of delay on the part of the purchaser of the flour to accept delivery and shipment thereof by the time fixed in each contract. They further found that the intention of the parties was that the carrying charges provided for in the contract for sale of flour should inure to the benefit of the seller members of plaintiff Association rather than to the United States, as the instructions issued by the Secretary expressly provided. They further found that the flat rate of fifty cents per barrel conversion charge provided in item (3) of exhibit “C” (finding 6) was designed and intended to cover only such expenses as were incidental to the normal and usual carrying period of conversion of wheat into flour, rather than to an unusual and extended period due to delay on the part of the purchaser of the flour to accept prompt delivery and order shipment.
They further found and held that the reason for the instructions to plaintiff to collect from the purchaser the y6<f per barrel per day carrying charges for delay beyond the *436 period necessary for normal conversion and delivery was because the fifty cents a barrel, normal conversion charge, was inadequate to reimburse members for carrying charges incident to long carrying periods. They held and found that the purpose of the Marketing Agreement was to dispose of as speedily as possible the surplus 1932 and 1933 wheat crops, and that the underlying policy of the Marketing Agreement and the intention of the parties thereto were that plaintiff should be paid the difference between the purchase and sales prices as provided therein and that no loss should be suffered by members of plaintiff Association in executing its terms. They also found that it could not be implied on the facts or under the Marketing Agreement that the intention of the Secretary in issuing instructions with reference to the per barrel carrying charge, or of plaintiff Association in incorporating that provision in the sales contracts, that such carrying charges should be used to reduce or offset any payments that might be made by the Secretary under the Marketing Agreement out of the proceeds from processing taxes.
In view of the facts established by the record, the provisions of the Marketing Agreement, and the findings and conclusions of the Office of the Secretary of Agriculture, plaintiff is entitled to recover the amount of $12,172.94.
Counsel for defendant assert that except as to the amount of $498.15 the claim is barred by the statute of limitation, but this claim is not supported by the record.
As appears from findings 9 and 13 plaintiff’s members collected from the Chinese Government Agency carrying charges at the rate provided for in the selling instructions issued by the Secretary and the sales contracts in the total amount of $37,353.38, but, as set forth in findings 12 and 23 the amount of such carrying charges accruing on and after October 1,1934, to the dates on which the flour was accepted for shipment by the Chinese Government Agency, was $12,-172.94, which is the amount claimed in the petition filed herein.
In the first brief filed in the case by plaintiff on March 15, 1943, plaintiff asked that the court render judgment in its favor for the full amount of carrying charges of $37,353.38, *437 but in view of the allegations of the petition and the facts with reference to the manner in which the claim was made, to the Secretary and the extent of the claim for adjustment, we are of opinion that plaintiff is not entitled to recover any amount in excess of $12,172.94 above mentioned. Any attempt to amend the petition so as to claim this larger amount would have stated a new cause of action to that extent, and such an amendment was barred by the statute of limitation of six years at the time plaintiff indicated, in said brief, that it should be allowed to amend its claim.
Paragraph 7 of the petition set forth that it was contemplated by plaintiff and the Chinese Government Agency that under the sales contracts the flour purchased thereunder would be delivered to the purchaser for shipment abroad not later than September 30, 1934, and that the Chinese Government Agency agreed to accept delivery on or before that date; that, nevertheless, the purchaser did not accept delivery of all the flour until after that date, and 216,323 barrels were delivered, on the order of the purchaser, between October 1 and December 15,1934: that because the purchaser did not accept delivery of the flour in accordance with the terms of its Agreement, plaintiff, through its associates and members, was obliged to incur expense at the rate of %th of one cent a barrel per day for carrying charges on the flour from and after September 30 up to the dates on which the various shipments were made.
The petition further-alleged that in order to reimburse itself and its members for the amount of expense so incurred for carrying charges, plaintiff demanded of and received from the Chinese Government Agency the aggregate amount of said carrying charges amounting to $12,172.94 in addition to the purchase price of the flour.
It seems clear that any amendment of these allegations of the petition so as to claim $25,180.44 additional carrying charges, computed strictly in accordance with the contracts made by plaintiff with the ■ Chinese Government ■ Agency, from July 31 and August 31, 1934, respectively, as provided in the four purchase contracts mentioned in finding 10,. would constitute a statement- of a new cause of action for the addi- *438 tionalamount. Moreover, no amendment of the petition was ever filed.
Mr. Fred B. Rhodes and Mr. William E. Carey, Jr., for plaintiff.
■ Mr. W. A. Stem, II, with whom was Mr. Assistant Attorney General Francis M. Shea, for defendant.
Judgment will be entered in favor of plaintiff for $12,172.94. It is so ordered.
Madden, Judge; Whitaker, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.
ON DEFENDANT’S MOTION FOE NEW TRIAL (Decided June 4,1945)
Littleton, Judge,
delivered the opinion of the court:
Defendant’s motion for a new trial is based upon the assertion that recovery of $11,674.79 of the amount of $12,172.94 claimed by plaintiff was barred by the statute of limitation of six years at the time the petition was filed herein, December 17,1940. This claim is based entirely upon the dates on which the Comptroller of the Department of Agriculture made certain payments to plaintiff as certain shipments were made from time to time in performance of contracts with the Chinese Government Agency, as set forth in the findings heretofore made by the court. See findings 14 to 23, inclusive, published April 2,1945.
Counsel for defendant contend in effect that each of these payments made by the officials of the Department of Agriculture on the documents described in the findings mentioned was final as. to the time for institution of suit under the Marketing Agreement in respect thereof, and that any claim which plaintiff had on account of inclusion in the sales price of flour of. the %-cent per barrel carrying charge involved in such shipments finally accrued, for the purpose of the statute of limitation for bringing suit, at the time such payments were made. This was the contention previously made by defendant and denied by the coui't. The findings heretofore made show it was the intention of both parties to *439 the Marketing Agreement that under the directions given in connection with the Chinese Government contracts for flour these carrying charges should not enter into the determination of the differential payable under the Marketing Agreement computed in accordance with exhibits A, B, and C thereof. There had been no change in the Marketing Agreement under sec. 7 thereof, which provided that it might be changed only “by agreement between the Association and the Secretary.” The findings and the evidence show that at the time the documents and vouchers referred to and relied upon by defendant were prepared, and when the payments were made thereunder by the Comptroller, all parties concerned Understood and agreed that the matter of whether or not the carrying charge- in question should enter into the determination of the amount payable under the Marketing Agreement, as the difference between the purchase price of the wheat and the net sales price of the flour, should be reserved and held in abeyance for later determination by the Secretary on a verified statement to be prepared and submitted by plaintiff to the Secretary when the contracts with the Chinese Government had been completed. Neither the Comptroller of the Department nor W. M. Clohessy, the authorized representative’s secretary, purported to make a final decision as to this portion of the amount claimed by plaintiff to be due as the difference between the purchase price of the wheat and the sales price of the flour. Therefore, under the provisions of sec. 8 of the Marketing Agreement, this claim of the plaintiff did not accrue within the meaning of the statute of limitation for bringing suit until a reasonable time after plaintiff prepared and filed with the Secretary a verified statement and claim with respect thereto. Such a claim was filed by plaintiff within a reasonable time and within six years of institution of the suit, and the Secretary considered and allowed the claim within a reasonable time thereafter, on July 11, 1935.
Defendant’s motion for a new trial is overruled.- It is so ordered.
Madden, Judge; Whitaker, Judge; and Whaley, . GMef Justice, concur.
Jones, Judge, took no part in the decision of this motion.